### DALEY v. BROWN et al.

(Supreme Court, Appellate Division, Fourth Department. November 22, 1899.)

1. MASTER AND SERVANT—NEGLIGENCE—FAILURE TO PROMULGATE RULES FOR GUIDANCE OF EMPLOYES—FELLOW SERVANT.

In an action by an employé, working under the directions of his foreman, for an injury sustained in attempting to shift a heavy engine into place, the fact that defendants had made a rule requiring the boom which was attached to the engine to be lowered before moving or shifting the engine, and that other contractors had made similar rules, is sufficient to authorize the submission of the question of the necessity of such a rule to the jury.

2. SAME—EVIDENCE.

Where it is assumed upon the trial that a rule requiring the boom attached to an engine to be lowered before moving or shifting the engine was not communicated to the foreman, and defendants introduce no evidence that such a rule was so communicated, and make no suggestion

of the lack of proof when the court announced its decision, which assumed the fact that such a rule was not communicated to the foreman, they cannot be, on appeal, heard to say that the case is lacking in proof.

**3. SAME—TO WHOM RULES COMMUNICATED.**

The promulgation of a rule, requiring the boom attached to an engine to be lowered before shifting or moving the engine, to the engineer only, is not enough where the engineer is, in the general work including the adjustment of the engine and the lowering of the boom, under the orders of the foreman.

**4. SAME—FELLOW SERVANT.**

The foreman and his men, together with the engineer, who in the general work including the adjustment of the engine and the lowering of the boom is under the orders of the foreman, while engaged in the shifting of the engine are fellow servants.

Adams, J., dissenting.

Appeal from trial term, Erie county.

Action by Owen Daley against Thomas Brown and others. From judgment for plaintiff, and an order denying motion for a new trial, defendants appeal. Affirmed.

In 1897 and 1898 the defendants, as co-partners, were engaged as contractors in excavating a large dry dock in the city of Buffalo. In this business they had seven stationary engines, which operated seven different hoisting derricks of different sizes and capacities. These engines were placed upon wooden sills about 10 feet from the sills of the derricks. Two braces or shores, consisting of timber about 6x6, were placed between the sill of the engine and the sill of the derrick. The main cables, which supported the weight of the boom of the derrick, ran through the top of the mast of the derrick to a drum which was attached to the engine. When the bucket of the derrick was loaded, a considerable weight rested upon these cables, and through them caused a considerable tension upon the drums and engines. with which the drums were connected. Without the bucket, the weight of the boom caused a pull upon the drum and the engine of more than a ton's weight. The braces described were there presumably to prevent this tension from drawing the engine towards the derrick. Upon the morning of the 26th of January, 1898, one of these engines became shifted out of position. The engineer thereupon called to his assistance Finnegan, the foreman of a gang of men at work in the ditch from which they were excavating. Finnegan came to the engine with four men, and attempted to shift the engine back in place. In the original shift one of these braces had been misplaced, but one remained in position. After some futile attempts, Finnegan ordered the other brace to be knocked out, and ordered his men, one of whom was this plaintiff, to get in between the derrick and the engine, and, with their crowbars, pry the engine into place. Meanwhile the boom upon the derrick was at an angle of 45 deg., which caused a pull upon the engine. The weight of the engine and its attachments was about four tons. The day was cold. The ground was frozen and icy. In attempting to put the engine back in place after the second brace was knocked out, the engine shunted towards the derrick, and the plaintiff's leg was caught between the sill of the engine and the sill of the derrick, and crushed, so that thereafter it was required to be amputated. For this injury the plaintiff has sued.

The engine was in charge of one Thompson, a competent licensed engineer. Neither his competency nor the competency of Finnegan, who was in charge of the men in the excavation, was questioned. The court submitted to the jury the following questions, which were answered as indicated after each question: "(1) Did the nature of the work require the defendants to make a rule that the boom be lowered before moving or shifting the engines? Yes. (2) Did the defendants make such a rule? Yes. (3) If so, did they communicate it to the engineer? Yes. (4) Did the engineer have authority, and was it his duty, to superintend and direct the work of shifting the engine? No. (5) Was the engineer negligent in superintending and directing, or in failing to superintend and direct, the manner of doing the work of shifting

the engine? No. (6) Did the foreman have authority, and was it his duty, to superintend and direct the work of shifting the engine? Yes. (7) Was the foreman (Finnegan) negligent in superintending and directing, or in failing to superintend and direct, the manner of doing the work of shifting the engines? No. (8) If such a rule was made, did due care and caution on the part of the defendants for the protection of their employés require that it should have been communicated to the foreman? Yes. (9) Did the defendants inform the plaintiff of the dangers of his employment? No. (10) Did the defendants sufficiently instruct the plaintiff as to his duties to enable him, in the exercise of proper care and caution, to avoid injury, except from dangers that could not have been reasonably foreseen by the defendants or were incident to the business? No. (11) Was the danger from which the injury resulted known to the plaintiff, or open and obvious? No. (12) Was the place in which the plaintiff was working at the time of receiving the injury, under the condition and circumstances surrounding the work, a safe place to do such work? No. (13) Did the exercise of reasonable care and caution on the part of the defendants for the safety of their employés require such a rule as is referred to in the first question to be made and communicated to the plaintiff? No. (14) What was the immediate cause of the engine's moving forward? Was it the removal of the remaining brace, or the lifting of the front of the engine, or both? The lifting of the east end of the engine after the removal of the remaining brace, together with the strain on the engine occasioned by the weight of the boom. (15) Did the plaintiff exercise that care and caution for his own safety that a man of ordinary prudence, with the knowledge possessed by the plaintiff, would have exercised under like circumstances? Yes. (16) Did the defendant Brown see and observe that the engine was being moved without the lowering of the boom, in time to have stopped the performance of the work in that manner? No. (17) Would the accident have happened had the boom been lowered? No. (18) What damage has the plaintiff sustained in consequence of the injuries complained of? $4,000." Thereafter the court directed judgment to be entered in behalf of the plaintiff. Other facts appear in the opinion.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, SPRING, and SMITH, JJ.

Tracy Becker, for appellants.
August Becker, for respondent.

SMITH, J. In the final decision of the case the court properly held that the defendants' liability must rest upon their failure to provide and properly promulgate rules for the guidance of their employés. The direct cause of this accident was the shunting of this engine towards the derrick. This was caused by knocking out the brace while the engine was subject to the pull of the weight of the boom, which had not been lowered. If the failure to lower the boom before knocking out this brace was the negligence either of Thompson or Finnegan alone, it cannot support this action. Their part in the readjustment of this engine was so far a detail of the work as to be the part of a fellow servant. In thus directing they did not represent the master. So, also, the failure to inform the servant of the danger of his position could not be imputable to the master, because the place of danger was one made dangerous by the negligence of a fellow servant. The theory of the trial court, however, upon which this judgment was directed, was that the defendants had failed to fulfill a duty which they owed to the plaintiff in failing properly to promulgate rules which were reasonably necessary for the safety of their employés. The court has held that in the prosecution of this

work the defendants should properly have made a rule which should require employés to lower the boom upon the derrick whenever the engine was in any way moved; that such a rule should be promulgated to those in charge of the work, and under whose directions the engines were to be moved; that Finnegan was the foreman of the work, and the superintendent under whose charge this engine was adjusted; that such rule was not communicated to Finnegan, and that the failure properly to promulgate this rule was the cause of the injury for which the defendants have been made liable. The defendants contend: (1) That this was not a case in which a rule was required; (2) that there is no evidence that the rule was not communicated to Finnegan; (3) that Finnegan was not in charge of the work, and that the promulgation of such rule to the engineer was sufficient.

1. It will not be contended that the master is in all cases required to promulgate a rule which, if obeyed, will protect the servant. Such a requirement would be unreasonable, and would require the master to anticipate all possible accidents to his employés. We apprehend that the general duty of a master is to use reasonable care to avoid accidents that may reasonably be anticipated. This is the test upon which his liability is based for an injury from defective machinery, or from a failure to provide a safe place to work. In determining whether an accident might reasonably have been anticipated from a failure to promulgate a rule, it is important to consider the nature of the work, the frequency or infrequency of a situation which would call for the application of the rule, and the nature of the cause of the accident. Was it one which a foreman, in the exercise of ordinary prudence, would be expected to guard against without any rule? In the case at bar, however, the defendants would seem to have foreclosed these considerations. They themselves have made a rule to provide against this class of accidents. It further appears that other contractors have made a similar rule. These facts are some evidence of its necessity; sufficient, we think, to authorize the submission of this question to the determination of the jury.

2. It was assumed upon the trial that this rule was not communicated to Finnegan, the foreman. While there is no evidence of that fact, all of the defendants were upon the stand, and the plaintiff is entitled to what inference may be drawn from the fact that they gave no evidence that the rule was communicated to the foreman, while it was explicitly shown that it was communicated to the engineer. The defendants were silent while these specific questions were submitted to the jury; and upon the decision of the court then announced, which assumed the fact that such rules were not communicated to Finnegan, the defendants made no suggestion of a want of proof, which, if then made, could, in the discretion of the court, have been supplied. Under these circumstances the defendants cannot now be heard to say that the case was lacking in this proof. Todd v. Nelson, 109 N. Y. 324, 16 N. E. 360.

3. The third contention of the defendants presents a more difficult question. We think the jury was authorized to find that in the general work, including the readjustment of this engine, the engineer was under the orders of the foreman, Finnegan. Finnegan had con-

trol of the men.   They were subject to his orders whether they were at work in the ditch or in the moving of the engine.   The boom was raised or lowered by the engineer at his direction, or at the direction of one of his men.   The engine was one of the instruments for the accomplishment of the work which he was supervising.   If the raising or lowering of this boom were an act which called for the service of the engineer alone, our impressions would be clear that the promulgation of this rule to the engineer would only be required. But this the engineer could not do alone.   When the boom was lowered, it was required to be supported.   This required the assistance of the foreman, and his direction.   At folio 360, the engineer swears:

"I was running the engine.   I could not lower that boom without I sent three or four men out there to put blocks under the boom; that is, when it laid on the ground.   I could not have lowered the end of it, and let it rest on the car.   The object of putting the blocks under the boom was to prevent its springing out of shape, as it was such a long boom.   You see, the way them wings was it had on the side of it, you had to have it level."

It will thus be seen that the lowering of the boom must have been done under the charge of Finnegan, who provided the men to place the supports.   This fact is emphasized by what actually occurred, to wit, a suggestion by the engineer that the boom be lowered, and the neglect of the foreman to have it lowered.   Under these circumstances we cannot say, as a matter of law, that the promulgation of this rule to the engineer was enough.   The jury might well have said that, had the foreman known of this requirement, this accident would have been prevented.   The conclusion we reach, therefore, is that the case was properly submitted to the jury, and we find no reason for disturbing the judgment which was directed thereupon.

Judgment and order affirmed, with costs.   All concur, except ADAMS, J., who dissents.